D. M. EVANS et al. *v.* G. T. BEAUMONT et al.

WILLS. *Legacy. Subsequent gift. Ademption. Proof must be clear and satisfactory.* A legacy of $5,000 by will; subsequent gift of valuable lot. Held on the face of the two transactions; no presumption arose of ademption. Both gifts being in writing, the Court does not decide whether parol proof could be introduced to show the *purpose* of satisfaction on the part of testator, but conceding for the argument it may be done, that such proof must be clear and satisfactory, and evidence of loose conversations, in which testator spoke of the gifts and a purpose to alter his will, or that he was not able to give the legacy after the gift of the lot, is not such satisfactory evidence.

---

FROM SHELBY.

---

Appeal from the Chancery Court at Memphis. S. P. WALKER, Ch.

W. M RANDOLPH for Complainants.

HARRIS & TURLEY and BELCHER & JORDAN for Defendants.

FREEMAN, J., delivered the opinion of the Court.

This bill is filed by complainants to enforce the payment of a legacy of $5,000 given to Julia Neely, now the wife of complainant, Evans, by the third clause of the will of Claiborne Deloach.

This legacy was to be paid, provided the estate of said Deloach should be worth fifty thousand

---

---

dollars at his death.    It was to be held in trust
by Thomas H. Allen to her sole and separate use,
free from the debts or control or contracts of any
husband she might marry, for the term of her
natural life, and at her death, go to her children.
The trustee was to invest and manage the fund
as he deemed best for her interest, during her life,
and the interest of her children after her death,
so as best to provide for their comfortable support
out of the income or profits of the same.

Deloach died the 29th of July, 1864. His
widow was appointed administratrix with the will
annexed, and has since intermarried with G. T.
Beaumont, her co-defendant.

It is conceded that the estate was worth fifty
thousand dollars at the death of the testator, so
that, nothing more appearing, the legacy is due,
and complainants entitled to a decree.

But this is met by respondents as follows—that
is to say:    That on the 1st day of May, 1862, the
said Deloach n a : a deed of conveyance to said
Julia in fee of a certain valuable lot in the city of
Memphis, and, to use the language of the answer,
"the force and effect of this deed, if held valid,
was to satisfy said legacy."    It is insisted, how-
ever, in the answer, that this deed was not effec-
tive to carry the title to the said Julia, for want
of delivery, but that an action of ejectment was
then pending to test this question, and in the
event it is sustained, then the above effect is
predicated of said deed.

On this statement, as it stands in the pleadings, it could scarcely be contended that respondents could maintain their contention that the legacy was satisfied, unless it could be maintained as a proposition of law or an inference of fact, that a legacy in money for the life of a party, and then to her children, is conclusively, or at any rate *prima facie* presumed to be satisfied by a subsequent conveyance of real estate to the legatee, without regard to the intention, or the relative value of the property to the legacy. No authority, we believe, goes to this extent. All authorities, we believe, agree that where the gift, by will and the subsequent portions advanced, or property conveyed, are not *ejusdem generis*, the presumption as such, will be repelled, or will not arise, and nothing more appearing, the legacy will be payable. Thus it is said—2 Leading Cases in Eq., top 571—"Thus land will not be presumed to be intended as a satisfaction for money, nor money for land." However, apparently exceptional cases are referred to, deciding it might be done: 15 Vesey, 507, dependent probably on other elements, additional and beyond the simple facts of a gift of personalty, and an after conveyance of other property, showing the intent to satisfy the former claim: See cases cited *Ibid.*

It is maintained, however, most earnestly, that facts are shown in this record, both by direct parol proof, as well as from the circumstances and situation of the parties, and a fair inference. to

be drawn from these, that it was the intention and purpose of Deloach that the gift of the lot should be in satisfaction of the legacy, and not that she should have both.

This contention presents for its solution several questions of more or less difficulty, some of them involved in almost hopeless perplexity, if we should undertake to solve them by attempting to reconcile the conflicting opinions of the ablest Judges, who have held opposite views upon them. We shall not attempt to do this—the task would be hopeless.

The leading facts in the case, that bear upon the relation and situation of the parties, are substantially as follows: Julia Neely was the daughter of a deceased sister of the testator, her father and mother having died, leaving her no estate, she was taken by him into his family in 1855, when she was about twelve years of age, brought up as one of his children, educated as such a child, and seems to have been recognized as standing in the place of an adopted child by the testator up to his death. He evidently felt it to be his duty to provide for her out of his estate, as shown by the will, and that he purposed doing this liberally, is further evidenced by the gift of the lot, estimated by some witnesses as at one time worth thirty thousand dollars, prob.ably much less as stated at the bar at this time.

On this state of facts, if we were to adopt the rule laid down by most of the authorities, that in

order to raise the presumption, as a matter of law, of satisfaction of a legacy by a subsequent gift, it must be a case between parent and child, or one standing in *loco parentis,* we should say, such was the relation shown in this case. It therefore becomes unnecessary for us to decide authoritatively in this case, whether the rule be correct or not. Suffice it to say, that we are unable to see the force or propriety of the reasoning by which it is supported.

In the case of a gift by will to a child, or one in the place of a child, and subsequent gift of substantially like kind and degree of benefit, without other evidence, under the rule, the law raises a presumption of satisfaction or ademption of the legacy by the subsequent gift, either in whole or in part, as its value may be: Smith, Marr, Eq., 381, Story Eq. J., Sec. 1111, *et seq.* But it is said this doctrine of constructive ademption of legacies has not been applied to strangers, that is persons who do not stand in these relations, and the *onus* of proving the contrary is on the party asserting it.

By these rules an arbitrary presumption is made against the child, or one standing in the place of a child, that a double portion is not intended, and the party only entitled to take the latter or compelled to elect between the two, while the stranger has no such difficulty in his way, and is presumed to be entitled to the bounty of the testator in both cases, until his right is disproven. We can but

feel, that a rule, as said by Lord Thurlow, that rests on the principle that a father has less affection for his child than a stranger, is not soundly based in reason, and not such as should be upheld by judicial adoption in our State. It is based on a logic that may be specious, but certainly is not found to have any foundation in the nature of the case, nor does it tend to reach the ends of either legal or natural justice. See Story's Eq. J., secs. 1100, 1110.

As we have said, however, we think it clear from the facts in this record, the testator intended by this legacy to provide a portion for the legatee, as standing to her in the place of a parent, and the case must be so treated : *Pynn* v. *Lockyer*, 5 Mylne and Craig, 29 to 35, cited Story's Eq., vol. 2, p. 350, note 1; *Powys* v. *Mansfield*, 6 Sim, R. 528, Story's Eq., vol. 2, 1111, note 1.

The case then is, of a gift by will, made in 1858, of five thousand dollars in money, on the condition, and with the limitations we have stated, and a subsequent gift of real estate in 1862, of much larger value, and we may add, with limitations of the same general character, differing, however, in several particulars. On the face of these facts, the two gifts stand independent of each other, nothing else appearing, clearly there is no ademption. Both stand on the terms of the instruments evidencing them, and there is nothing on the face of the will or the deed to connect the one with the other, or to show any intention of

the testator by the last gift in any way to affect the integrity of the first.

The question then is, whether that purpose, as an intermediate element, can be proven, so as to substitute the latter gift for the first, or show it was made in satisfaction of the first; and then assuming this may be done, how, the question would be, and by what character of testimony? Whether by parol testimony, in a case like the present, or only by evidence in writing.

On these questions we may find authorities, apparently, if not actually, sustaining either view, that has been maintained by counsel in the able arguments submitted in this case.

After a most careful examination of the testimony in the record, we do not deem it necessary to go into these questions, or authoritatively to lay down the rule, one way or the other.

Conceding that parol testimony may be admitted to show the intention of a testator by a subsequent gift, either where the subsequent gift is *ejusdem generis* or otherwise, and that this is a question of intention, as seems to be the principle given by the leading authorities, yet, we think, in any view of it, such intention must be shown by clear and most satisfactory testimony in a case like the present.

The party has the right to the legacy on the face of the will, and the condition being shown on which it was given, she also has the undisputed title to the lot given by the testator. To show

that the first given has been satisfied and dis-
charged by the last, the testimony should, as we
have said, be clear and satisfactory. We have
given careful examination of the proof in this
record, and do not find such a case.

In the first place it is attempted to be shown
by proof of a conversation had with the testator,
had probably early in the year 1864, the deed
having been made in May, 1862. This conversa-
tion amounts to nothing more than the fact that
he had given the lot, and intended to alter his will.
He had ample time to have done this, after mak-
ing the deed, and had the same opportunity after
this time and before his death. The fact, that
with the notion that it was proper to alter his
will, he failed to do so, and that he died after
opportunity to have done so, would lead to the
inference that he had abandoned such purpose, and
determined to let the two gifts remain intact as
they stood.

Another conversation is testified to, with com-
plainant a few days before her marriage, in 1865,
purporting that she had been told by the testator,
on his death bed, that he had given her by his
will the five thousand dollars, but was now unable
to do so, and that his children would probably be
poor.

We may remark, that this character of testi-
mony is always held to be the weakest of all tes-
timony, and in this case, we can but feel that it
is, to say the least of it, subject to the suspicion

Evans *v.* Beaumont.

of being slightly colored, coming from two sisters of respondent, whose sympathies would naturally be in favor of such sister.

Conceding the fullest force that it is entitled to, we do not think this testimony serves to show any intention on the part of the testator, in such definite form, as it should appear, as that right evidenced by a solemn will, left unrevoked, should be overturned by it, or be deemed discharged and satisfied. Besides, the question would most naturally occur, if such had been the purpose of the testator, why not say so in the deed, or why not alter the will? The most that can be said from this evidence is, that subsequent to the making of the deed of gift of the lot, the testator had an unexecuted, floating notion, that he was not able to give both the legacy and the lot, and had thought of changing his will, but died without ever having carried this purpose into effect, or probably without ever having definitely determined to do so.

We therefore conclude, that even conceding the testimony competent, which we do not definitely decide, it fails to make out the contention of respondent, and the result is, the decree of the Chancellor must be reversed, and decree, as in this opinion, costs to be paid by respondents.

W. E. LYNN for Porter.